## LOWENSTEIN et al. v. FEDERAL RUBBER CO.

### No. 10549.

Circuit Court of Appeals, Eighth Circuit.
Aug. 3, 1936.

Rehearing Denied Aug. 31, 1936.

Harry L. Thomas, of Kansas City, Mo. (Inghram D. Hook and Hook & Thomas, all of Kansas City, Mo., on the brief), for appellants.

R. B. Caldwell, of Kansas City, Mo. (J. M. McCune and McCune, Caldwell & Downing, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiff, an automobile tire manufacturer, sued on an account for automobile tires sold and delivered, and the defendants, retail dealers, having answered admitting the debt as alleged, there was an instructed verdict for the plaintiff on its cause of action and judgment as prayed. But there was controversy as to three items of counterclaim set up by defendants. The defendants alleged that when they bought tires from the plaintiff, the plaintiff agreed to furnish for delivery to defendants' customers so-called guaranty bonds providing that the plaintiff would guarantee against any condition which might render the **tires**

unsatisfactory for service; providing further, that the liability under the guaranty should be limited to repairing the tire without charge and placing it in serviceable condition, or replacing it with a new tire, and also that any federal dealer in the United States was authorized to interpret and operate under the terms of the bond. Defendants claimed that plaintiff had, after a certain date, refused to permit the defendants to make the said adjustments at the plaintiff's expense with customers to whom they had sold tires, and had also refused to supply such bonds to the defendants after a certain date, and so had occasioned two items of damage: (1) $1,362.20 in connection with tires defendants had already sold at the time of trial; (2) $2,010.70 in connection with tires defendants still had on hand for sale. Defendants' third item of counterclaim· was for an amount equal to 2½ per cent. of the gross sales made by the plaintiff to one Marshall U. S. Auto Supply Company over a certain period, which amount it was claimed the plaintiff had obligated itself to pay defendants.

The court, by its instructions to the jury, took from their consideration the two items of counterclaim (1) $1,362.20, and (2) $2,010.70, and instructed the jury on the third item of counterclaim that the only issue for them to pass upon ·was whether the contract between the parties which obligated the plaintiff to pay the defendants 2½ per cent. on all sales made· by plaintiff to the Marshall Company was canceled on October 31, 1933, or was continued in effect to August 17, 1934. If it was canceled, defendants could not recover on their counterclaim. If it was not canceled, the defendants could recover $1,314.59. The jury found on the issue so defined against the defendants, and recovery on that item of counterclaim was denied.

The defendants appeal and claim that there was error in impaneling the jury and in the proceedings on the trial relative to the two items of counterclaim for $1,362.20 and $2,010.70, respectively. It has not assigned other error as to the verdict and judgment upon the item of counterclaim that was submitted to and determined against the defendants by the jury.

As to the impaneling of the jury, it appears that at the outset of the trial 18 talesmen, including 2 by the name of Brown, were examined, and no cause for challenge was found. The plaintiff then struck 3 of the 18 names listed upon a typewritten sheet and the defendants then struck 3 from the 15 remaining. On the names of the 12 that were left being called, they stood up, and it was found that the plaintiff had struck E. L. Brown by mistake, intending to strike H. W. Brown. In the absence of the jury plaintiff was permitted to correct its mistake and strike H. W. instead of E. L. Brown and defendants were given opportunity to revise their challenges. They declined. There is no showing that defendants had any objection to E. L. Brown or would have challenged him, or that they would have made their challenges any differently if E. L. Brown had been on the list of 15 from which it struck. Neither is there any claim that the jury was not fair and impartial. It is argued that if defendants had wanted to change their challenges after plaintiff had been allowed to correct its mistake, some juror would have been left on the panel whom defendants had first stricken off, and that was the only possibility of prejudice called to the trial court's attention. The further contention is made that if defendants had changed their challenges some juror would have known that he had first been challenged by defendants and had then been put back. No other possibility of prejudice has been worked out by appellant. There is nothing to show that any juror knew anything about the striking, except that the parties had struck 6 known names between them, and the plaintiff had struck E. L. Brown by mistake instead of H. W. Brown, or that appellant was in the slightest prejudiced by the procedure. Particularly there is nothing to indicate that defendants were prevented from excluding any talesman they wanted to exclude.

■ It is of great importance that in the selection of the jury the procedure adapted to give a fair and even opportunity of challenge to each of the parties litigant should be carefully adhered to in the trial court. In the instant case, the trial court might well have withdrawn the juror H. W. Brown, whom the plaintiff had mistakenly failed to challenge and impaneled the jury anew; such is the better practice. But where, as in this case, no slightest prejudice has been occasioned the appellant and appellant has not been prevented from rejecting any talesman whom it sought to reject, the precedents in the federal courts do not require reversal of the judgment on the grounds assigned. Kloss v. United States (C.C.A.8) 77 F.(2d) 462, 463; Hoffman v. United States (C.C.A.8) 20 F.(2d) 328, 329; Hill v. United States (C.C.A.8) 15 F.

(2d) 14, 16; Wilkes v. United States (C.C.A.6) 291 F. 988, 991; Pearson v. Rocky Mt. Fuel Co. (C.C.A.8) 219 F. 496; Pearce v. United States (C.C.A.5) 192 F. 561; Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208. While there is no doubt that the situation here came about innocently and through mistake, yet similar situations might easily result from design. Since it is difficult to establish prejudice, it is the duty of the trial court to view departures from the regular order of impaneling juries with a critical eye and not to allow such unless clearly convinced that an innocent mistake exists and that it can be rectified in a manner which will work no prejudice to either party.

As to the first of the two items of counterclaim ($1,362.20), it appears that defendants had sold certain tires bought from the plaintiff and had given the customers the guaranty bonds of the plaintiff containing the plaintiff's obligation to make adjustments through "any Federal dealer in the United States." Pursuant to the provisions of the bonds the defendants had made some adjustments as contemplated by the bonds and had been reimbursed by the plaintiff, but it was probable that more adjustments would have to be made in the future, and defendants claimed that they would be obliged to make the adjustments themselves for their customers or else that they would suffer loss of business. They claimed that the plaintiff was not intending to and was not going to repay defendants for such expense. It was estimated that the amount of the expense would reach $1,362.20 on the tires that had been sold, and the item of counterclaim was in that amount.

As to the other item of counterclaim ($2,010.70), it appears that the defendants had on hand for sale a quantity of tires bought from the plaintiff, and that after they had used all the bonds they had on hand they requested the plaintiff to furnish enough more to cover the tires that were on hand, and the plaintiff had failed to do so. The defendants estimated that $2,010.70 would be the probable cost of making the adjustments that would be called for by purchasers to whom the tires would be sold and the item of counterclaim was in that amount.

The position of the plaintiff was that it had not refused and would not refuse to furnish the defendants with bonds in connection with Federal tires sold by plaintiff to defendants, and plaintiff offered to deliver the necessary number of bonds to the defendants. But the plaintiff took the position, both as to the bonds already issued by defendants to their customers and as to the bonds which defendants were offered and authorized to issue in the future, that the plaintiff would not be liable to reimburse the defendants in case the defendants made the adjustments themselves. The plaintiff argued that under the provisions of the bonds it was contemplated that only a Federal dealer should make adjustments at plaintiff's expense, and that as defendants had ceased to be a Federal dealer they should not be permitted to exercise the right to interpret the bonds or hold the plaintiff for the expense of making adjustments thereunder.

The plaintiff having demurred to the counterclaim, the trial court decided that these two items of counterclaim were prematurely brought and withdrew them from the consideration of the jury without prejudice to the defendants to sue the plaintiff in a future action for any expense the defendants might, in the future, incur by making adjustments called for in the bonds.

Such action of the court is for review, and we think should be sustained under the authority of New York Life Ins. Co. v. Viglas, 56 S.Ct. 615, 80 L.Ed. 971, and cases therein cited.

The controlling consideration is that the plaintiff tire company did not repudiate or disclaim its contract with defendants. It fully recognized the same and undertook to perform in good faith according to its interpretation. There was a difference of opinion as to whether the defendants would be in position to lawfully demand reimbursement if they should proceed to make adjustments, but the controversy was as to the interpretation of the contract. It did not result from any repudiation or disclaimer or refusal to perform. There was no present obligation on the part of the plaintiff to do anything or pay anything to the defendants at the time of trial. The trial court rightly held that as no damage had accrued to the defendants; that is, they had not incurred any expense claimed to be chargeable to the plaintiff; they should not be permitted to anticipate by estimating what their expenses might be in the future if they pursued a certain course of action. The counterclaim was premature. New York Life Ins. Co. v. Viglas, supra; Helgar Corp. v. Warner's Features, Inc., 222 N.Y. 449, 119 N.E. 113; Suburban Improve-

ment Co. v. Scott Lumber Co. (C.C.A.4) 67 F.(2d) 335, 90 A.L.R. 330; McNamara v. Cerf (C.C.A.2) 4 F.(2d) 997; Hoggson Bros. v. First Nat. Bank of Roswell (C.C.A. 8) 231 F. 869; Dingley v. Oler, 117 U.S. 490, 503, 6 S.Ct. 850, 29 L.Ed. 984; Kimel v. Missouri State Life Insurance Co. (C.C.A. 10) 71 F.(2d) 921, 923; Milton v. H.C. Stone Lumber Co. (D.C.) 36 F.(2d) 583, 587; Lake Shore & M. S. Ry. Co. v. Richards, 152 Ill. 59, 38 N.E. 773, 30 L.R.A. 33; United Farmers' City Market v. Donofrio (Ariz.) 29 P.(2d) 144, 148, 149; McGuire v. J. Neils Lumber Co., 97 Minn. 293, 297, 107 N.W. 130, 132; Edwards v. Proctor, 173 N. C. 41, 91 S.E. 584; R. T. Clark & Co. v. Miller, 154 Miss. 233, 122 So. 475, 481; Senter v. Dixie Motor Coach Corp. (Tex. Civ.App.) 67 S.W.(2d) 345, 348.

■■ Appellants have briefed their contention that the tender of the bonds made by the plaintiff for the use of the defendants was insufficient. The defendants' charge was that plaintiff would not supply them with bonds, and the burden was upon the defendants to prove their charge. They could not sustain the burden of proof in the face of the production of the bonds in court by the plaintiff and the offer of them to the defendants.

■ Certain testimony was offered by defendants tending to show that they had made an offer to return some of the tires they bought from the plaintiff. The trial court properly excluded the offer, as it did not tend to sustain the burden upon the defendants as to either of their three items of counterclaim and was merely an offer of compromise.

The judgment should be, and is, affirmed.