This suit arose out of an automobile accident which occurred in the Town of Leesville at about 7:45 o'clock in the evening of March 13, 1945. The accident is alleged to have taken place on Highway No. 118, also referred to as Terminal Road and which, after all, is a street comprising that part of a State highway leading north out of the corporate limits of the Town of Leesville.
J. Elmer Hutchins, the defendant, had parked his car momentarily on the east side of Terminal Road facing south. An automobile belonging to Dr. E.M. Shaw was also parked on that same side of the road a few feet south of the defendant's car but it was facing north. The car of I.C. Beshear, the plaintiff, was travelling north on the same road or street and as it approached the Shaw car defendant drove his car diagonally from the position in which it was parked, in a southwesterly direction, in order to pass around the Shaw car and proceed south. As he did so defendant was confronted by the plaintiff's car which was also about to pass around the Shaw car from the opposite direction, and when they were both about even with the rear end of the Shaw car the collision took place.
Plaintiff charges the defendant with negligence in not maintaining a proper lookout and in not having his car under proper control; in attempting to drive from his left side of the road on to his right lane of travel without regard to any oncoming automobiles from the opposite direction and lastly in failing to give any signal or warning of his attempt to cross the road from his left to his right side. By reason of the collision his car was damaged to the extent of $479.89 which is the amount of his demand in this suit against the defendant.
The defendant, for answer, admits that the situation existed very much the same as alleged by plaintiff with this important difference: He avers that before proceeding from his parking place on the east side of the highway he looked first to the north and then to the south for on-coming traffic and saw plaintiff's car coming from the south. It was then approximately 160 yards from him and he concluded that he had ample time to cross the highway and enter the west lane of travel which he started to do and that he could safely have done so had not plaintiff been driving his car at an excessive rate of speed, in violation of the ordinance of the Town of Leesville which fixes the rate at 20 miles per hour. He alleges that his car was parked about 25 feet north of Dr. Shaw's; that he had already pulled over to the west side of the highway and was actually headed south when, on reaching a point about even with the Shaw car, plaintiff's car, in attempting to pass between them, side-swiped his, the front end of plaintiff's car striking a glancing blow to the rear fender and rear wheel and running board of his. He avers that after the collision plaintiff's car caromed off to the right and travelled about 80 feet across a drainage ditch and only came to rest after striking a telephone post at that point.
Defendant denies that he was negligent in any respect and avers that the accident was due solely to the gross recklessness and carelessness of the plaintiff in driving at an excessive speed said to have been approximately 40 or 50 miles per hour. Assuming then the position of plaintiff in reconvention, on the facts as set out by him, he prayed for judgment against the plaintiff in the sum of $117.42 which he alleges was the amount of the damage done to his car in the collision.
Upon trial of the case in the lower court the district judge rendered judgment dismissing both plaintiff's demand and the defendant's reconventional demand. He assigned no written reasons for judgment but obviously found both parties to have been at fault. Plaintiff took an appeal and defendant answered asking for a reversal of the judgment in so far as it rejected his demand in reconvention. *Page 491 
A careful reading and consideration of the record leaves us with the impression of the correctness of the judgment of the court below. At least we are unable to find manifest error. Both drivers were about to negotiate a dangerous maneuver in passing around another parked automobile in meeting each other on the highway, especially after darkness had set in, and neither took the necessary precaution in seeing that the lane of travel in front of him was or would be sufficiently clear for him to do so in safety.
[1] The testimony amply supports the defendant's contention that plaintiff was travelling at a rate of speed that was greatly in excess of 20 miles per hour and as regulated by the municipal ordinance of the Town of Leesville and his failure to retard his speed in view of the emergency which he was bound to see in front of him in order to try to avoid a collision was no doubt one of the causes which contributed to the accident. He was at least the length of a city block away when defendant's car was already in the process of moving from its parking place to get over to the west side of the highway in order to pass around the Shaw automobile. Both his car and defendant's had their headlights burning and if he was looking ahead at all he was bound to have seen defendant's car at some time whilst it was making its maneuver on the highway. Assuming the distance he was away at that moment to be 300 feet (and plaintiff and his witnesses estimated it at much more than that), there is no reason why he should not have slowed down and brought his car under control so as to be able even to stop, if necessary, when he saw that they would meet at a point about even with Dr. Shaw's car and a collision would become imminent. That he did not slow down his speed, or if he did, not sufficiently, is evidenced by the force of the blow with which his car struck the other and the fact that it continued some 80 feet beyond the point of collision and only stopped then because it ran into a telephone or light pole across a drainage ditch. Plaintiff says that in the impact the brake line of his car was broken and he lost control of the brakes, but even so it hardly seems reasonable, especially if, as he says, he was going only 20 to 25 miles, that the car would have continued that far after the blow and been forced to stop in the manner it did.
Taking the physical facts into consideration with the testimony of the defendant and his witnesses, we are led to the conclusion that plaintiff must have been going 40 or 45 miles per hour which speed was not only in violation of the town ordinance but was also much too fast under the circumstances existing on the highway in front of him at the moment.
[2] As far as the defendant's negligence is concerned it is observed in the first place that his car was parked on his left hand side of the highway about 25 feet in front of another car which was properly parked on that same side of the road. That was the situation which in itself called for some extra precaution on his part when he was ready to leave. He seems to have appreciated that as he says that he was careful enough to look in both directions for approaching traffic. He saw plaintiff's car coming from the south and then, he states, that assuming the distance he was away from him, he "figured he would have time to get in his lane of travel, so he pulled out." He says further that he did not "assume anybody would be speeding in the city limits." However there seems to be but little doubt, from his own testimony, and also that of his wife who sat next to him in his car, that almost upon leaving their parking place they became impressed with the speed at which plaintiff's car was coming towards them. Mrs. Hutchins, when asked to state how Beshear was operating his car after her husband's car had reached the center of the highway, answered: "Well, we saw his car coming and you could hear the roar. Of course, I could tell he was coming at a great rate of speed and I assume he was going about fifty." Mrs. Almon Hicks, Mrs. Hutchins' mother, was sitting in the back seat of the car. She did not see the Beshear car coming but heard her daughter warn Mr. Hutchins that "that car is speeding," and at that moment she looked ahead and saw it by O'Banion's Store. That is where the defendant admits it was when he became impressed with the speed at which it was coming. From the testimony of Mr. J.A. O'Banion we learn that the distance from his store to the point where the accident occurred is 75 yards; so the situation which confronted the defendant, as we view it, was this: When he looked south before leaving his parking place he saw plaintiff's car coming and estimated it to be about a *Page 492 
block and a half away so he proceeded. By the time it took him to pull to the center of the highway plaintiff's car had already reached a point opposite O'Banion's Store, a little over 200 feet from him. At that time not only did he realize that it was coming very fast but his wife who heard the roaring as it came became alarmed enough to call to him that it was speeding. In spite of all this and in face of the difficult and dangerous operation he had undertaken to go across the highway and pass ahead of the Shaw car, he continued on. He did not have time to get his car completely straightened out and headed south, as shown by his own testimony, and it was struck on the rear back fender and wheel by the plaintiff's. He was negligent therefore if not first in leaving his place of safety where he was parked, in view of plaintiff's approaching car, then in failing to stop after realizing the dangerous rate of speed at which that car was coming. His demand in reconvention was therefore properly rejected by the district judge.
For the reasons herein stated the judgment appealed from is affirmed.